**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01987-CMA

GWENDOLYN L. HARTMAN,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

     Defendant.

---

**ORDER AFFIRMING THE DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS
AND SUPPLEMENTAL SECURITY INCOME**
_____

     This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Gwendolyn L. Hartman's application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1382–85.  Jurisdiction is proper under 42 U.S.C. § 405(g).

     Plaintiff argues that the administrative law judge ("ALJ") improperly accorded the opinion of a non-examining, non-treating medical consultant, Dr. S. Latchamsetty, only moderate weight.  (Doc. # 14 at iv.)  The Commissioner argues that Plaintiff's argument fails because it relies on an incorrect finding of the ALJ—that Plaintiff did not have any past relevant work.  (Doc. # 15 at 1.)  For the reasons set forth below, the Court affirms

the decision of the Commissioner to deny Plaintiff's applications for disability insurance benefits and supplemental security income.

## I. BACKGROUND

### A. PLAINTIFF'S APPLICATION AND OPINION EVIDENCE

Plaintiff, born June 28, 1955, was fifty-four years old on March 10, 2010, the date she initially alleged her disability began.[1] (Doc. # 11-5 at 129.)[2] For fifteen years prior to the alleged onset of her disability, Plaintiff worked as a housekeeper at hotels, and in 2010, she held various temporary positions for approximately one month each. (Doc. # 11-6 at 183; Doc. # 11-5 at 148.)

On October 11, 2011, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and an application for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1382–85.[3] (Doc. # 11-5 at 127–37.) She alleged that a "[b]ack injury, high blood pressure, stroke[s], [and] [m]ental breakdown[s]" precluded her from working. (Doc. # 11-6 at 182.) Plaintiff stated that her pain was located in her head and her lower back "each and every day" and was made worse by "movement and cold weath[er] and walking." (*Id.* at 190–91.) She further described, "I am sad all the time. I cry all the time. I want to kill myself all the time. I am just no[t] me." (*Id.*)

---

[1] Plaintiff later amended her alleged date of the onset of her disability to January 4, 2012, as the Court explains later in this Order. *See* (Doc. # 11-2 at 32.) Plaintiff was fifty-five years old on January 4, 2012.

[2] All of the exhibits filed Doc. # 11 constitute the Administrative Record in this matter. The Court cites the docket number of the exhibit (*e.g.*, Doc. # 11-5) and the page number from the Administrative Record (*e.g.*, at 129).

[3] Plaintiff had filed applications for disability insurance benefits and supplemental security income on December 6, 2010. (Doc. # 11-5 at 117–26.) The record does not indicate what became of those applications.

Dr. Brett Valette, Ph.D., conducted a psychiatric consultative examination on Plaintiff on January 4, 2012.  (Doc. # 11-7 at 282–84.)  Dr. Valette described Plaintiff as "vague with symptoms," not appearing to be in pain, and irritable with him and his staff. (*Id.* at 283.)  "It [was] difficult to diagnose [Plaintiff] because of her vagueness with her symptoms," he wrote, but he nonetheless diagnosed her with "Nonspecific Mood Disorder, depression."  (*Id.* at 284.)  Dr. Valette had concerns "about symptom exaggeration" and about Plaintiff's lack of effort during the evaluation.  (*Id.*)  Of her limitations, Dr. Valette wrote:

> I think she was able to understand and follow my directions.  I think her understanding and memory is probably intact.  Her concentration and persistence is maybe mildly impaired because of depression and pain. . . . As far as work limitations, from a psychological perspective, I do not see any work limitations at this time.  Her main complaint is back pain.

(*Id.*)

Dr. Marshall Meier, M.D., conducted a physical consultative exam on January 7, 2012.  (Doc. # 11-7 at 285–91.)  Plaintiff complained of back pain that began in March 2010, when she lifted a box over her head and felt a crack, and of right hip pain that began in late 2011.  (*Id.* at 285.)  Dr. Meier observed that Plaintiff "showed excessive movement during the exam.  She was bending over, standing up, and extremely animated.  She did not appear to be in any distress . . . and appeared to be comfortable."  (*Id.* at 286.)  He noted that there was not an acute abnormality in her spine, though he observed "[m]ild degenerative disc and degenerative facet disease." (*Id.* at 289.)  Dr. Meier wrote the following functional assessment:

> I feel the claimant's current condition will not impose any restrictions on her standing or walking capacity.   Sitting capacity, no restrictions.

> Assistive device, no restrictions. Lifting and carrying capacity, no restrictions occasionally or frequently. Postural activities: There are postural limitations recommended at this time. Manipulative activities: I would have concerns with patient swelling in her PIP joints, excessive manipulative activities may cause worsening of her symptoms.

(*Id.* at 289–90.)

On February 23, 2012, a single decision maker ("SDM") at the regional Social Security Administration office in Pueblo, Colorado, decided that Plaintiff was not disabled and therefore denied Plaintiff's applications for benefits. (Doc. # 11-3 at 65, 79.) The SDM assessed Plaintiff's physical residual functional capacity based on the record and determined Plaintiff was capable of "light work." (*Id.* at 60.) He indicated that Plaintiff was capable of occasionally lifting or carrying twenty pounds, of frequently lifting or carrying ten pounds, of standing or walking with normal breaks for a total of six hours in an eight-hour workday, and of sitting with normal breaks for a total of six hours in an eight-hour workday. (*Id.* at 60–61.) The SDM determined that Plaintiff did not have postural, manipulative, visual, or communicative limitations. (*Id.* at 61.) Also as part of the Administration's review, its psychological consultant, Dr. MaryAnn Wharry, Psy.D., reviewed Plaintiff's medical records and concluded that Plaintiff "retain[ed] [the] mental ability to do work not involving significant complexity or judgment" and "[could] respond appropriately to supervision [and] coworkers but must have minimal to no interaction with the general public." (*Id.* at 63, 77.) On February 23, 2012, the Social Security Administration informed Plaintiff that she did not qualify for benefits. (Doc. # 11-4 at 81–84.)

On March 1, 2012, the Administration's medical consultant, Dr. S. Latchamsetty, M.D., reviewed the SDM's assessment of Plaintiff's physical residual functional capacity. (Doc. # 11-7 at 297–98.) Dr. Latchamsetty checked off that he agreed with the SDM's conclusions about Plaintiff's physical limitations and symptoms. (*Id.* at 297.) Dr. Latchamsetty concluded that the SDM's assessment of Plaintiff's physical residual functional capacity was "not unreasonable." (*Id.*)

On March 7, 2012, another medical consultant, Dr. J.V. Rizzo, Ph.D., reviewed the Administration's psychiatric assessment of Plaintiff. (*Id.* at 299–303.) Dr. Rizzo checked off that he agreed with the Dr. Valette's, Dr. Wharry's, and the Administration's assessments of Plaintiff's mental functional limitations. (*Id.* at 300.) Dr. Rizzo concluded that Plaintiff's "statements regarding a mental disability were partially credible" because they were consistent "with [the] diagnosis on file," but "objective [consultative examination] findings [did] not show severity of mental limitations that [Plaintiff] reports subjectively." (*Id.* at 299.) He described:

> She is oriented and in contact with reality. She has generally adequate cognitive functioning. . . . Claimant has a severe mood disorder, but she retains the mental ability to perform simple and detailed tasks and activities with ordinary supervision. She can interact appropriately in brief/superficial contacts, but she can be abrasive in close/frequent interactions. She can adapt to ordinary workplace expectations and changes.

(*Id.*)

Plaintiff requested a hearing by an ALJ on April 4, 2012. (Doc. # 11-4 at 85.) A hearing before an ALJ was scheduled for January 3, 2013. (*Id.* at 96.)

On May 11, 2012, another medical consultant, Dr. Rudolf Titanji, M.D., completed a physical residual functional capacity assessment based on the evidence in Plaintiff's file. (Doc. # 11-7 at 304–11.) He determined that Plaintiff was able to occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk with normal breaks for a total of six hours in an eight-hour workday, and sit with normal breaks for a total of six hours in an eight-hour workday. (*Id.* at 305.) As to Plaintiff's postural limitations, Dr. Titanji determined she was capable of climbing, balancing, stopping, kneeling, crouching, and crawling frequently. (*Id.* at 306.) Dr. Titanji noted that Plaintiff did not have any manipulative, visual, communicative, or environmental limitations. (*Id.* at 307–08.) He concluded that Plaintiff's "statements [were] partially credible based on the totality of the evidence," noting that Plaintiff's "alleged physical limitations [were] not fully supported by findings" in her medical record. (*Id.* at 309.)

On December 5, 2012, Plaintiff retained attorney Ms. Rachael A. Lundy. (Doc. # 11-4 at 108–09.)

On December 27, 2012, Dr. José Vega, Ph.D., retained by Plaintiff's counsel, performed a mental status examination on Plaintiff. (Doc. # 11-8 at 376–84.) In a letter to the Commissioner's attorney dated December 29, 2012, Dr. Vega recounted Plaintiff's explanation of her work history (she "indicated that she ha[d] always worked"), medical issues, mental health treatment, and history of traumas. (*Id.* at 377–79.) Dr. Vega observed that Plaintiff appeared "to function between the borderline to low average range of intelligence" and "did not appear to present with any significant pain behavior in the course of [her] interview." (*Id.* at 380.) He assessed her limitations in

understanding and memory as moderate to marked, in sustained concentration and

persistence as moderate to marked, in social interaction as marked to extreme, and in

adaptation as moderate to extreme. (*Id.* at 383–84.) Dr. Vega concluded:

> The results of this evaluation indicate that [Plaintiff] presents with
> significant depression and anxiety. . . . It is seen that she is in need of
> mental health treatment. She does not tolerate being around other
> people; prefers to be by herself, reporting being angry, irritable, and easily
> upset. The results of this evaluation, in part, are consistent with that of Dr.
> Valette's findings. However, Dr. Valette's findings may well be clouded by
> the poor rapport that was established in the beginning of that evaluation.

(*Id.* at 381–82.)

## B. THE ALJ'S FIRST DECISION

ALJ Debra Boudreau conducted a hearing on Plaintiffs' applications on January

3, 2013. *See* (Doc. # 11-2 at 29–50.) Plaintiff, her counsel, and an impartial vocational

expert, Mr. Martin Rauer, were present. (*Id.* at 29.) Plaintiff first amended her alleged

date of the onset of her disability to January 4, 2012. (*Id.* at 32.) She explained to the

ALJ that she was injured when she was "working at the Marriott" as a "house maid" and

"laundry person;" she "went down to pick up something and [she] heard a crack in her

back." (*Id.* at 39.) The vocational expert, Mr. Rauer, categorized Plaintiff's past work in

2005 and 2006 as "a housekeeping cleaner," requiring light exertion, and as a "laundry

worker," requiring medium exertion.[4] (*Id.* at 45.) The ALJ presented the vocational

expert with two hypothetical individuals, and the vocational expert answered that both

---

[4] With regard to physical exertion, "medium work" is defined as involving "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20
C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c). "Heavy work" "involves lifting no more than 100
pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20
C.F.R. § 404.1567(d); 20 C.F.R. § 416.967(d). "Light work" is defined as involving "lifting no
more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10
pounds." 20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c).

individuals would be able to perform work as a housekeeping cleaner, an electronic worker, a machine operator, and a plastic press molder. (*Id.* at 45–48.)

On January 25, 2013, the ALJ issued her decision that Plaintiff was capable of returning to work that she had performed in the past and, therefore, was not entitled to disability insurance benefits or supplemental security income. (*Id.* at 9–28.) The ALJ applied the five-step sequential evaluation process[5] to determine that Plaintiff was not disabled. At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 4, 2012, the amended alleged onset date. (*Id.* at 15.) At the second step, the ALJ identified the following severe impairments in Plaintiff: mild degenerative disc and joint disease of the lumbar spine; a mood disorder; and a depressive disorder. (*Id.*) At the third step, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment in the regulations. (*Id.* at 16–18.) The ALJ then concluded that Plaintiff had:

> [T]he residual functional capacity to perform medium work . . . except that she can sit, stand and/or walk for six hours during an eight-hour workday; she has no postural, manipulative, visual, or environmental limitations; she can understand and remember both simple and moderately complex tasks that can be learned and mastered within three months; her work duties should not require social interactions with the general public; she can interact appropriately with coworkers and supervisors; she can tolerate

---

[5] The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The steps of the evaluation are whether: (1) the claimant is currently working; (2) the claimant has a severe impairment; (3) the claimant's impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) the impairment precludes the claimant from doing her past relevant work; and (5) the impairment precludes the claimant from doing any work. *See* 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c); *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 (10th Cir. 2007). A finding that a claimant is or is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

work changes, plan and set goals, travel and recognize and avoid work hazards.

(*Id.* at 18.)  In support of that conclusion, the ALJ gave an overview of the medical evidence and reasoned that though Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms and her allegedly restricted daily activities [were] not well supported by the evidence."  (*Id.* at 21.)

She assigned Dr. Meier's opinion that Plaintiff had "no exertional restrictions" "substantial weight" and assigned Dr. Latchamsetty's opinion less weight than Dr. Meier's opinion because she believed Dr. Latchamsetty's assessment "represent[ed] the least" Plaintiff "could perform" and because Dr. Meier "actually examined [Plaintiff]." (*Id.* at 21–22.)  The ALJ assigned Dr. Valette's opinion of Plaintiff's psychological fitness "considerable weight" and Dr. Wharry's opinion "significant weight," as it was "well supported by, and consistent with, the record as a whole, showing no attempt to pursue mental health treatment, mild impairment in cognitive functioning, and some difficulties with interpersonal relations."  (*Id.* at 22.)  Dr. Vega's opinion warranted "little weight," the ALJ stated, observing that his assessment was arranged by Plaintiff's counsel and that Dr. Vega was not aware of the Administration's requirements for a finding of disability. (*Id.*)

At the fourth step, the ALJ held that Plaintiff was "**capable of performing past relevant work** as a housekeeping cleaner and laundry worker," which, she stated, required light and medium levels of exertion, respectively, citing the Dictionary of

Occupational Titles. (*Id.* at 23) (emphasis added). Because the ALJ concluded that Plaintiff was "capable of returning to work that she performed in the past," she was "not disabled" and not entitled to disability insurance or supplement security benefits. (*Id.*) The ALJ did not reach the fifth step of analysis.

Plaintiff requested that the Appeals Council review the ALJ's decision on February 26, 2013. (*Id.* at 8.) The Appeals Could denied Plaintiff's request for review on April 17, 2014. (*Id.* at 1–6.) When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481; *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

## C.    THE COURT'S REMAND

Plaintiff then sought judicial review of the ALJ's adverse decision by filing *Hartman v. Colvin*, No. 14-cv-01510-MEH, 2015 WL 1609806 (D. Colo. April 9, 2015). (Doc. # 11-10 at 466–504.)

The Court affirmed in part and reversed in part the ALJ's decision, and it remanded the ALJ's decision. *Id.* at *1. First, the Court agreed with Plaintiff's argument that the ALJ, in determining that Plaintiff could perform "medium" work, failed to account for the postural limitations that Dr. Meier recommended, despite assigning his opinion substantial weight. *Id.* at *9–10. The Court described it as "puzzling" that Dr. Meier concluded that "[t]here [were] postural limitations recommended" but did not note why or what limitations were recommended. *Id.* at *9; *see also* (Doc. # 11-7 at 289, 286.) The Court held that the ALJ's "failure to explain why she accepted Dr. Meier's opinion but did not apply the postural limitations" required remand. *Id.* at *11. Second, the Court

also remanded the ALJ's decision because "the ALJ failed to weigh, or even to mention, Dr. Rizzo's opinion." *Id.*; *see also* (Doc. # 11-7 at 299–303.) The Court explicitly affirmed the ALJ's findings as to Dr. Wharry's and Dr. Vega's opinions. *Id.* at *17; *see also* (Doc. # 11-3 at 51–80; Doc. # 11-8 at 376–84.)

## D. THE ALJ'S SECOND DECISION

After the Court's remand, the ALJ conducted a second hearing on December 29, 2015. *See* (Doc. # 11-9 at 417–35.) Plaintiff and her new counsel, Mr. Michael Seckar, *see* (Doc. # 11-1 at 555–57), appeared, as did impartial vocational expert Ms. Nora Dunne. (Doc. # 11-9 at 417.) The ALJ informed Plaintiff at the beginning of the hearing that "[t]he only decision that [she was] bound by . . . [was] that of the District Court and the Appeals Council remand order." (*Id.* at 419.) The ALJ admitted all exhibits she had admitted in the first hearing, as well as numerous new exhibits. (*Id.* at 420.) Plaintiff testified about her symptoms and how they limited her activities. (*Id.* at 421–28.) The ALJ did not inquire about Plaintiff's employment history.

When the vocational expert took the stand, the ALJ asked her to categorize Plaintiff's "past work over the preceding 15 years," and the vocational expert testified that Plaintiff had worked as a housekeeper, a laundry worker, a waitress, a bar maid, a general construction worker, and a highway worker:

> She worked as a housekeeper. That's [Dictionary of Occupational Titles] of 323.687-014. It is light. It has a skill level of 2. She was a laundry worker, 361.685-018. That is medium. She was a waitress, 311.477-030. That's light, with a skill level of 3. . . . And highway worker, 899.684-014. And that job's medium and it has a skill level of 3.

(*Id.* at 428–29.)  The ALJ posed a hypothetical about the employment opportunities for a claimant with Plaintiff's age of 60, "a vocational profile similar to that which [the vocational expert] just described," and one year of college, with certain physical and mental limitations.  (*Id.* at 429–30.)  The vocational expert answered that such a hypothetical individual could work as a laundry worker and a housekeeper, as well as other "medium" jobs, such as a cook/helper or a hospital cleaner.  (*Id.* at 430–31.)

The ALJ issued her second decision on March 28, 2016, again concluding that Plaintiff was not disabled and not entitled to disability insurance benefits or supplemental security income.  (*Id.* at 393–416.)  At the first three steps of the five-step analysis, the ALJ arrived at the same determinations as in her first decision: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability; (2) Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine[6], mood disorder, and depression; and (3) Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of those in the listings.  (*Id.* at 398–401.)  The ALJ stated that Plaintiff has the residual functional capacity to:

> [P]erform **medium work** . . . as [Plaintiff] is able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk [and sit] up to six hours in an eight-hour workday. . . .  [Plaintiff] can frequently climb, balance, stoop, kneel, crouch, and crawl.  [Plaintiff] is able to understand and remember moderately complex instruction that can be learned and mastered within a three month period.  [Plaintiff] can sustain concentration, persistence, and pace for those instructions in a low stress environment. . . . work duties should not require more than rare interaction with the general public . . . , but [Plaintiff] is able to interact

---

[6] The ALJ described Plaintiff's degenerative disc disease of the lumbar spine as "mild" in her previous decision.  *See* (Doc. # 11-2 at 15.)

appropriately with coworkers and supervisors, tolerate supervision and work changes, plan and set goals, travel, and recognize and avoid work hazards.

(*Id.* at 401–02) (emphasis added). The ALJ explained that on remand, she gave "only moderate weight to the opinion of Dr. Meier" because the limitations Dr. Titanji found "were supported by reliable evidence in the record." (*Id.* at 405.) Dr. Titanji's opinion that Plaintiff is capable of a range of medium work warranted "great weight," the ALJ continued, because the medical record, "including physical examinations showing [Plaintiff] had a normal gait with full range of motion, 5/5 strength in all planes of the spine, [and] normal sensation," indicated Plaintiff is capable of medium work. (*Id.* at 406–07.) The ALJ accorded moderate weight to Dr. Latchamsetty's opinion. (*Id.* at 407.) Finally, the ALJ assigned the opinions of Dr. Wharry and Dr. Rizzo "great weight" because they were "internally consistent and well supported by the record of evidence." (*Id.*)

At the fourth step, the ALJ stated—without explanation—that Plaintiff "has no past relevant work." (*Id.*) She proceeded directly on to the fifth step, where she relied on the testimony of the vocational expert to conclude that Plaintiff is able to perform the requirements of representative medium occupations, such as cook helper, hospital cleaner, and laundry worker. (*Id.* at 408.) Because Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ held that Plaintiff is not disabled and not entitled to benefits. (*Id.*)

Plaintiff submitted written objections to the ALJ's decision to the Appeals Council on April 12, 2016. *See* (*id.* at 389.) The Appeals Council declined to review the ALJ's

decision on July 25, 2017, (*id.* at 385–80), and the ALJ's decision became the final

decision of the Commissioner, 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481.

Plaintiff initiated the action presently before the Court on August 17, 2017.  (Doc.

# 1.)  After the administrative record was filed, Plaintiff submitted her Opening Brief on

November 15, 2017.  (Doc. # 14.)  The Commissioner responded in support of the ALJ's

decision on December 12, 2017 (Doc. # 15), to which Plaintiff replied on December 27,

2017 (Doc. # 18).

## II.    <u>STANDARD OF REVIEW</u>

When reviewing the Commissioner's decision, the Court is limited to determining

"whether the findings are supported by substantial evidence and whether the Secretary

applied the correct legal standards."  *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir.

1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

First, the Supreme Court has defined "substantial evidence" as "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."  *Consol.*

*Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938).  "Substantial evidence is more

than a scintilla, but less than a preponderance . . . ."  *Campbell v. Bowen*, 822 F.2d

1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court

"may not reweigh the evidence nor substitute [its] judgment for the Secretary's."  *Glass*

*v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  In addition, the Court "may not

displace the agency's choice between two fairly conflicting views, even though the

[C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "A finding of '"no substantial evidence" will be only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no

reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see also Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010); *Lynn P. v. Berryhill*, No. 17-CV-212-JFJ, 2018 WL 3142937, *3 (N.D. Okla. June 27, 2018). Where the court "can follow the [ALJ' s] reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## III.    ANALYSIS

Plaintiff's sole argument on appeal is that the ALJ "did not have a valid reason for failing to follow Dr. Latchamsetty's opinion of physical restrictions." (Doc. # 14 at 4.) Plaintiff characterizes Dr. Latchamsetty's review as an "agree[ment]" with the SDM's limitations findings and Dr. Latchamsetty's "restrictions" as "fit[ting] the light work category because lifting is limited to twenty pounds." (*Id.*); *see* (Doc. # 11-7 at 297–98.) Plaintiff explains:

> Dr. Latchamsetty's light duty restrictions are relevant because, if adopted, the grid rules would require the ALJ to award disability benefits as of [P]laintiff's fifty-fifth birthday. Grid rule 202.06 directs an award of disability for a claimant over fifty-five who is restricted to **light work** and has no transferable skills. **The ALJ found** that transferability of skills is not an issue because **[P]laintiff had no past relevant work** from which skills could have been acquired. Therefore, the case turns on the issue of whether the ALJ had valid reasons for rejecting Dr. Latchamsetty's opinion of light duty restrictions.

(*Id.* at 4–5) (emphasis added).

## A.    THE GRID RULE

The Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2,—commonly referred to as the "grids," *Anders v. Berryhill*, 688 F. App'x 514, 517 (10th Cir. 2017)—provide "a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants." *Perbeck v. Astrue*, 487 F. Supp. 2d 1267, 1272 (D. Kan. 2007) (citing *Heckler v. Campbell*, 461 U.S. 458, 468 (1983)).  "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00.

Rule 202.06 of the grids provides that a claimant is presumptively disabled if the claimant is of "advanced age,"[7] is a "high school graduate or more-does not provide for direct entry into skilled work," and has "skilled or semiskilled-skills not transferable" work experience..  20 C.F.R. Pt. 404, Subpt. P, App. 2, 202.06.  Stated differently:

> [F]or individuals **of advanced age** who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or **who have no work experience**, the limitations in vocational adaptability represented by **functional restriction to light work** warrant a finding of **disabled**.

20 C.F.R. Pt. 404, Subpt. P, App. 2, 202.00(c) (emphasis added).  *See Daniels v. Apfel*, 154 F.3d 1129, 1131–31 (10th Cir. 1998) ("Had an ALJ applied the next higher age

---

[7] "Advanced age" is defined in the grids as "55 and over."  20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00(f).

category, the claimant would have been presumptively disabled" under Rule 202.06);

*Ancona v. Astrue*, No. 09-cv-01764, 2010 WL 3874196, *2 (D. Colo. Sept. 29, 2010)

(stating that had the ALJ accepted limitations that precluded the claimant's past relevant

work, the plaintiff "would have been found disabled under Grid Rule 202.06 (as [the

plaintiff] was of advanced age of 56 and her limitations were at or less than the light

exertional level).")

## B.    PLAINTIFF'S PAST RELEVANT WORK

Relevant here, Rule 202.06 provides that a claimant: (1) of advanced age, (2)

who does not have work experience and, (3) is functionally restricted to light work, is

presumptively disabled.  Plaintiff argues that Rule 202.06 applies to her and that she is

therefore entitled to benefits.  (Doc. # 14 at 4–5.)  First, it is undisputed that Plaintiff

turned 55 years old on June 28, 2010, and is therefore of "advanced age."  Second, the

ALJ stated in her second decision that Plaintiff "has no past relevant work" and

therefore "transferability of job skills is not an issue."  (Doc. # 11-9 at 407.)  And third, in

Plaintiff's Opening Brief, she argues that she is functionally restricted to light work, in

accordance with her interpretation with Dr. Latchamsetty's report.  (Doc. # 14 at 4.)

Plaintiff concludes that she is disabled pursuant to Rule 202.06.  Her conclusion

seemingly turns on the third factor, whether she is functionally restricted to light work or

medium work.  (*Id.* at 5.)

Plaintiff's argument on appeal assumes that Rule 202.06 applies because she

does not have any past relevant work, as the ALJ stated.  *See* (Doc. # 11-9 at 407.)

However, this assumption is not so easily made.  The ALJ's determination, delivered

without explanation, that Plaintiff "has no past relevant work" is not supported by substantial evidence. The Court cannot find, nor does Plaintiff cite to, **any** evidence in support of that determination. The Court is not in a position to speculate why the ALJ determined in her second decision that Plaintiff has no past relevant work; the Commissioner concedes that the ALJ "mistakenly stated" this (Doc. # 15 at 5).

It seems to the Court that substantial evidence instead supports a finding that Plaintiff previously performed light and medium work at substantial gainful levels. *See* (Doc. # 11-2 at 45; Doc. # 11-3 at 64–65, 78–79; Doc. # 11-6 at 199–210; Doc. # 11-9 at 429; Doc. # 11-12 at 597–98, 605–12). The ALJ concluded as much in her first decision, issued in 2013: Plaintiff "is capable of performing past relevant work as a Housekeeping Cleaner and Laundry Worker." (Doc. # 11-2 at 23.) And when the ALJ held a second hearing, after her decision was remanded, the ALJ again stated that Plaintiff had past work requiring light and medium levels of exertion over the preceding fifteen years. (Doc. # 11-9 at 428–29.)

The Court therefore holds that the ALJ's determination that Plaintiff has no past relevant work at the fourth step of analysis was not supported by substantial evidence.

## C.  HARMLESS ERROR ANALYSIS

However, the ALJ's erroneous determination that Plaintiff "has no past relevant work" was harmless. *See* (*id.* at 407.) As the Court just explained, substantial evidence supports a finding that Plaintiff previously performed light and medium work, such as work as a housekeeping cleaner and a laundry worker. The ALJ concluded that Plaintiff still had the RFC to perform medium work:

> [Plaintiff] has the residual functional capacity to perform **medium work** as defined in 20 CFR 404.1567(c) and 416.967(c), as [Plaintiff] is able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk up to six hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. However, [Plaintiff] can frequently climb, balance, stoop, kneel, crouch, and crawl.

(*Id.* at 401) (emphasis added). Had the ALJ correctly assessed Plaintiff's past relevant work at the fourth step of analysis by applying Plaintiff's RFC to her past experiences doing light and medium work as a housekeeping cleaner and a laundry worker, the ALJ would have concluded that Plaintiff is still capable of performing her past relevant work as a housekeeping cleaner and a laundry worker, just as the vocational expert testified, (*id.* at 430), and as the ALJ concluded in her first decision, (Doc. # 11-2 at 23). The Court is confident that the ALJ, had she applied the fourth step correctly, could not have resolved the factual matter in any other way, nor could have any reasonable administrative factfinder. *See Allen*, 357 F.3d at 1145.

It follows that the ALJ, and every reasonable administrative factfinder, would have therefore concluded that Plaintiff was capable of returning to work that she performed in the past and that a finding of "not disabled" was appropriate. The ALJ would have arrived at the same decision that she did here: that Plaintiff was not entitled to benefits under the Social Security Act. The ALJ's error was therefore harmless.

Because the Court holds that the ALJ's determination that Plaintiff has no past relevant work lacks even a scintilla of supporting evidence, the Court need not reach Plaintiff's argument about the applicability of Rule 202.06.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that the ALJ's denial of disability

benefits is AFFIRMED.


DATED:  August 6, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge